## J. E. ULDRICK AND JANE Y., HIS WIFE, *vs.* WM. H. SIMPSON AND WM. S. McBRIDE.

J. and Y. were appointed executors of B., with power to sell a certain tract of land to pay pecuniary legacies. J. alone qualified and acted. He then died, leaving a will, and his executors sold the tract of land to Y., taking his single bill to secure the payment of the purchase money. Y. took possession of the land, and died several years after the sale, leaving the single bill unsatisfied. On bill, by a pecuniary legatee of B., against one of the executors of J., for payment of plaintiff's legacy, it appeared that the only asset of B.'s estate, in the hands of defendant, was the single bill of Y., which had become of doubtful value, if not wholly worthless: *Held,* That the defendant could not defend himself on the ground that the sale of the tract of land to B. was void.

BEFORE CARROLL, CH., AT ABBEVILLE, JUNE, 1868.

There were two Circuit Court decrees in this case, from which appeals were taken by the defendant, McBride. The first was made by his Honor Chancellor Johnson, in May, 1867, and is as follows:

JOHNSON, Ch. On the 19th day of January, 1853, John Bas-

kin, the grandfather of the complainant, Jane Uldrick, executed his will, and soon afterward died, leaving the same unrevoked; the eighth and ninth clauses of which are as follows, to wit:

"8th. It is my will and desire that the heirs of my deceased daughter, Margaret Cook's children, namely: John and Jane Cook, I give and bequeath each five dollars for their separate use and benefit. To Jane, Mary and Margaret Cook, I give and bequeath to each six hundred dollars, for their separate use and benefit, with this provision, that the said amount is to be left in trust to my executors, for the benefit of the above named heirs, without reference to any future husband.

"9th. It is my will and desire that the tract of land on which I now live, containing two hundred and four acres, be sold by my executors; and I do hereby empower my executors to sell and make title for the same to the purchasers; and all the rest, or residue, or balance of my estate, of whatever kind or description, that may not heretofore be willed, with all moneys, &c., be equally divided between Jane Baskin, Jas. S. Baskin, Susannah Simpson, Isabella McBride, Jane Harkness, Mary and Martha Baskin.

" All which foregoing shares I give to them, as above stated, forever. And, finally, I do hereby appoint my son, Jas. S. Baskin, Dr. L. Yarbrough, jointly, executors of this, my last will and testament."

Jas. S. Baskin, soon after the death of the testator, had his will proved, and qualified as an executor of the same. L. Yarbrough did not qualify as an executor, nor did he formally renounce the appointment as such.

On the 5th day of October, 1854, James S. Baskin executed his will, and soon afterwards died, leaving the same unrevoked, without having fully discharged the trust conferred by the will of his testator; and in his will he appointed William H. Simpson and William S. McBride, the defendants, executors of the same; both of whom qualified, and entered upon the discharge of the duties thereby imposed. And on the 16th day of September, 1856, they sold and conveyed to Dr. L. Yarbrough the tract of land devised by John Baskin to be sold by his executors, for the sum of sixteen hundred dollars; and, in payment for the same, took his sealed note, or single bill, for the said amount, payable to them, or the bearer thereof, one day after the date of the same, with interest on the same from 1st day of January, 1856.

In the autumn of 1856, William H. Simpson, who attended

mostly to the business, removed to the State of Mississippi; and, before leaving, placed the single bill in the hands of his co-executor, William S. McBride, who now holds the same; and in his answer states that he had never received upon the same but the sum of sixty dollars, which he still holds; though it does appear that Dr. Yarbrough, during his life, was in the habit of paying over to the complainants—the latter of whom is one of the legatees of six hundred dollars, under the 8th clause of the will of John Baskin—the annual interest on the legacy, sometimes in his own name, and sometimes in the name of William S. McBride, as appears by exhibit filed with the answer of the latter.

The bill was filed for the purpose of getting the Court to order that five hundred dollars of the bequest of six hundred should be invested in a tract of land, containing one hundred and six acres, which had been purchased by John E. Uldrick for that amount, and on which he and his family were residing, but which had not been paid for; and, also, for the purpose of requiring the defendants to account for their management of the said legacy.

The defendant, Wm. S. McBride, in his answer, denies that he intentionally did any act, either as executor or trustee, under the will of John Baskin, and submits that, if he and his co-executor did execute titles to the tract of land devised in his will to be sold, they did it under a mistake of their powers; and that the estate of Dr. L. Yarbrough, which is represented by his widow, Martha Yarbrough, as the administratrix of his estate, is not responsible for the amount due on the single bill, from the fact that the titles to the lands are defective; and, also, that they should not be required, in any event, to pay the whole amount of the said legacy, until it is ascertained whether the estate of Dr. L. Yarbrough is sufficient to satisfy the whole of the note, in due course of administration. It is also submitted, that no fund was provided, by the will of John Baskin, with which to pay the legacy to the complainant, Jane Uldrick.

I think it very clear that, upon any reasonable construction of the will, it was the intention of the testator that the specific bequests should be paid before any division should be made by his executors, under the 9th clause of his will.

If James S. Baskin had sold and conveyed the land, as the only executor who qualified under the will, there could be no doubt but that his conveyance would have been good.—*Britton et al.* vs. *Lewis et al.*, 8 Rich. Eq., 271. And, if he had died intestate, and

Uldrick *vs.* Simpson and McBride.

the defendant had taken out letters of administration, with the will annexed, upon the estate of John Baskin, I think that, under the provision of the Act of 1787, taken in connection with the Statute of '21, Henry 8, c. 4, they might have sold and conveyed the land. But can they call in question the validity of their own deed? I think not.

When executors are appointed to sell and convey lands, a neglect to qualify is *prima facia* evidence of a refusal to act, and will validate a sale made by the acting executors.—*Robertson* vs. *Gain*, 2 Hump., 367.

So I think Dr. L. Yarbrough may be regarded as having renounced his right to qualify as an executor of the will of John Baskin, especially as he recognized the right of the executors of James S. Baskin to sell under the first will by purchasing from them; and it would come with bad grace from those claiming under him now to interpose the objections.

Under the terms of the 9th clause of the will, directing the proceeds of the sale of the land, and of the other property not specifically disposed of, to be divided amongst the testator's children, I am of the opinion that the defendant, as the executor of the executor of the will of John Baskin, had the legal right to sell and convey the land, under the power therein conferred, irrespective of Statute 4, Edward 3, c. 47.—Powell on Devises, 243; Williams on Executors, 629; *Chanot* vs. *Villeponteaux*, 3 McC., 26.

William H. Simpson was not made a party by publication, and, consequently, was not before the Court; and the evidence as to the propriety of the proposed investment, and as to other facts which would enable the Court to make an intelligent decree, are so meagre that I do not deem it advisable to attempt to decide any of the points made, except that provision is made in the will of John Baskin for the payment of the legacy of six hundred dollars, and that the conveyance of the land, by the executors of James S. Baskin, to Dr. L. Yarbrough, is a good and valid conveyance; and, as to these points, it is ordered and decreed, that the above opinion be taken as the judgment of the Court. It is also ordered and decreed, that all the other points of the case be referred back to the Commissioner, to take evidence upon the same; and that he do report thereon, with leave to report any special matter. It is also ordered and decreed, that the complainant, if so advised, may still make William H. Simpson a party, by publication.

The second decree is that of His Honor Chancellor Carroll, and is as follows:

CARROLL, Ch.    All that was disputable, originally, in this cause, seems to have been determined by the decree already pronounced. Whatever is there adjudged, whether of fact or law, cannot, of course, be here reviewed or reversed.    The decree referred to determines, in effect, that the defendants, being executors of James S. Baskin, were, in legal contemplation, the executor also of his testator, John Baskin, and were, therefore, competent to execute the power of sale conferred by the will of the latter.

In that decree it is also set forth that, "on the 16th September, 1856, the defendants *sold and conveyed* to Dr. L. Yarbrough the tract of land devised by John Baskin to be sold by his executors," and that conveyance is adjudged to be "good and valid."    But, if the land has been effectually conveyed to the purchaser, Yarbrough, then the defendants have relied for payment of the price solely upon his individual obligation, without personal security, or even a lien upon the property sold.    More than that, they have permitted the debt to remain since September, 1856, thus insufficiently secured, making no effort for its collection, and receiving nothing in payment, except portions of the accruing interest.    Such acts, on the part of the defendants, must be regarded as inconsistent with ordinary prudence and circumspection.—*Lamb & Lamb*, Spear Eq., 289; *Massey* vs. *Cureton*, Chev. Eq., 181.

The decree of Chancellor Johnson seems also to adjudge that the pecuniary legacies, under the will of John Baskin, are charged upon his whole estate not specifically disposed of.    It is not shown that there was any original deficiency of assets to satisfy them, and, in such case, a legatee seeking payment of his pecuniary bequest is not required to make any other person, except the executors, a party to his bill.—Story Eq. Pl., 203.

Though the purchase money for the land had been paid by Yarbrough at the date of the sale, it would have then been insufficient to satisfy the three pecuniary legacies.    It was the plain duty of James S. Baskin to have retained enough of his testator's assets to pay them.    If he did not, then it was not less plainly incumbent upon the defendants to reserve a sufficiency for that purpose, out of the assets of James S. Baskin, when they transferred his estate to the husband and trustee of his daughter.    If it were necessary to be shown, the fact appears that the defendants were aware of the

insufficiency of the land to pay those legacies, at the very time that they parted with the entire assets of their immediate testator. The transfer and payment to Young, and the sale to Yarbrough, occurred on the same day, 16th September, 1856, and it can hardly be supposed that the defendants' omission to retain assets enough to supply that deficiency resulted from their having placed an overestimate upon the value of the land. To the extent of such deficiency the defendants must be held liable, even though they were acquitted of all responsibility, in respect of the land or the proceeds of its sale.

As the sale of the land, and the insufficient security accepted for the purchase money, have been adjudged to be the direct acts of both defendants, both are alike answerable to the plaintiffs for the loss that has resulted. Whether, by reason of McBride's delay in collecting the debt, the primary liability, as between the defendants themselves, should rest upon him, was not discussed at the hearing, and nothing upon that question is here determined.

Yarbrough is dead, and the proof is that his assets will not suffice to pay his specialty debts. As the case is presented, it is considered that the plaintiffs should not be delayed until the defendants have pursued and exhausted their remedies against the estate of Yarbrough for the purchase money of the land. The consequences of their neglect of duty must be visited upon the defendants alone, and they be held immediately and personally responsible to the plaintiffs.

The legacy to the plaintiff, Jane, being for her separate use and benefit, the capital must remain in the custody of the defendants, the executors under the will of her grandfather, unless some other person be appointed her trustee to receive it. By the report of the Commissioner, it appears that the proposed investment of a portion of the sum thus bequeathed to her will be proper and advantageous. But the deed conveying the land to the plaintiff, J. E. Uldrick, seems to be unskillfully drawn. Some further release or assurance from the vendor, Crawford, may perhaps be necessary to perfect the title. As, also, one of the defendants has removed from the State, it may be found expedient to have another person substituted as trustee. It is, therefore, deemed advisable to leave it to the solicitors of the plaintiffs to propose such order, touching the investment referred to, as may be fit and proper.

It is adjudged and decreed, that the defendants are indebted to the plaintiff, Jane Y. Uldrick, on account of her legacy under the

will of her grandfather, John Baskin, in the sum of eight hundred and sixty dollars and sixteen cents, with interest on six hundred dollars from the fifth day of June last.

It is further ordered, that two hundred and sixty dollars and sixteen cents, parcel of the sum last mentioned, being the interest accrued upon such legacy up to the 5th June last, be paid by the defendants to the plaintiff, Jane, upon the joint receipt of herself and husband; and that the plaintiffs have leave to sue out final process to compel such payment.

And it is further ordered, that the plaintiffs have leave to move for such further orders as may be convenient and proper, in respect of the investment of a portion of the plaintiff, Jane Y. Uldrick's said legacy, as proposed in and by their bill.

Let the costs of the suit be paid by the defendants.

The defendant, McBride, appealed, and now moved this Court to reverse the decree of Chancellor Johnson, in the following particulars:

1. That the decree assumes, without proof, and against the statement of the answer, that a deed of conveyance of the land described in the pleadings was executed by William H. Simpson and William S. McBride to L. Yarbrough.

2. That the power conferred by the will to sell and convey real estate of the testator, is a personal trust—not an executorial act—and cannot be executed by the executor of an executor; and the judgment of the Chancellor, that a conveyance, by the defendants, of the land of John Baskin is valid and effective, is a misapprehension of the law.

3. That the presumption that L. Yarbrough renounced his office of executor of John Baskin, or the power to sell and convey the real estate in question, is deduced from circumstances that are inconclusive and insufficient.

He also appealed from the decree of Chancellor Carroll, and now moved to reverse the same, in the particulars, and for the reasons following:

1. Because, if it be conceded that the defendants, as executors of Jas. S. Baskin, had the power and authority to sell and convey the real estate of John Baskin, deceased, and did engage to sell the same to Dr. L. Yarbrough without having executed a conveyance, and, also, without having exacted surety of him, the land itself,

Uldrick *vs.* Simpson and McBride.

and the pecuniary means and credit of the vendee, are the amplest security for the purchase money, and it is erroneous and inequitable to hold the defendants personally responsible for it, especially as John Baskin had reposed in the vendor the trust and confidence of nominating him one of his executors.

2. Because the Chancellor has assumed, contrary to the uncontradicted and conclusive evidence on the subject, that the defendants did execute a conveyance of the land in question to Dr. Yarbrough, and makes that assumption the ground of imputing a want of diligence and fidelity to the defendants in regard to the purchase money, which subjects them to personal liability for the same.

3. Because the defendants are held liable for the difference between the price of the land and the amounts of the pecuniary legacies, when it is manifest, from the evidence, that the personal estate of John Baskin was divided amongst his legatees soon after his death, and in the lifetime of James S. Baskin, and that the estate of James S. Baskin was taken out of the hands of the defendants, as his executors, by the decree in a cause in Chancery, formally commenced and prosecuted, and without notice of the pecuniary legacies, or notice that they had not been paid or arranged.

4. Because the decree assumes that the defendant, W. S. McBride, was guilty of neglect in not collecting the amount of the single bill; whereas, he was hindered and prohibited from so doing by "stay laws," the closing of the Courts, and other obstacles produced by the late war; and exacts payment from him, without allowing him time to collect from Yarbrough's administratrix, or consideration of the sufficiency of his estate to pay the amount.

*Burt,* for appellant.

*Thomson & Fair,* contra.

March 12, 1870. The opinion of the Court was delivered by.

WILLARD, A. J. Jane Y., wife of complainant, J. E. Uldrick, is entitled, under the will of her grandfather, John Baskin, to a legacy of $600. Complainants have filed their bill against Simpson and McBride, executors of James S. Baskin, sole qualifying executor of John Baskin, for an account and payment of this legacy. The Circuit decree establishes the claim of complainants against the defendant, McBride, individually—the defendant, Simpson, having left the State, and not being brought in to answer the bill. The decree is based, principally, upon two matters of fact:

First, that the defendants, Simpson and McBride, had sold certain real estate, belonging to the testator, to Dr. Yarbrough, and had taken his note therefor; that they made no effort to collect the note, and that it has become of doubtful value, if not wholly worthless; that this real estate, at the time of sale, constituted the only means of paying complainant's legacy, the other assets of the estate of John Baskin having been distributed at the time the real estate was sold; second, that defendants had fully distributed the assets of their immediate testator, J. S. Baskin, without making provision for the payment of complainant's demand.

The defendant, McBride, who alone answered, alleges that there is no sufficient proof of the sale of the land by the defendants; and, also, sets up a want of authority in the defendants to make such a sale. The evidence on which the fact of sale depends is, indeed, slight, but is not overborne by any testimony tending to negate the fact of such sale. We find no ground for disturbing the conclusions of the Chancellor in this respect.

The objection that the defendants had no authority to sell the land, whatever may be its bearing on this case, cannot be made by the defendant, McBride. John Baskin, the original testator, gave, by his will, a power of sale, as to his land in question, to his executors, James S. Baskin and Dr. Yarbrough. The object of the power was to raise assets to satisfy the provisions of his will, among which was the pecuniary legacy to Jane Y. James S. Baskin qualified, but Yarbrough did not. The power of sale was not executed during the lifetime of James S. Baskin, and after his decease, his executors, the defendants, assumed, rightfully or wrongfully, to execute it. The result of this action was, that the lands passed into the possession of Dr. Yarbrough, and, at his decease, became encumbered with the claims of his creditors and representatives. If defendants are permitted to dispute the validity of this sale, complainant, Jane Y., might be left with an expensive and doubtful litigation, her only means of realizing the legacy of her grandfather, while there is no reason to doubt that a faithful execution of the will of John Baskin would have secured the payment of this legacy.

It is unimportant to inquire whether James S. Baskin or the defendants are primarily chargeable with the waste of the assets out of which the complainant's legacy should have been paid, as, in either case, they held the means of satisfying the complainant's demand, and were bound to do so. Having failed in the discharge of

this duty, the defendant, McBride, cannot screen himself from the liability to account, as decreed by the Chancellor.

The decree must be affirmed, and the appeal dismissed.

*Moses*, C. J., concurred.